UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELINE FERNANDEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KATIE MAY, LLC,<br><br>Defendant. | Case No. 1:24-cv-01592-VEC |

**Defendant's Memorandum in Support of its Motion to Dismiss**

Richard S. Mandaro
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
(212) 336-8106 (direct)
(516) 650-1080 (cell)
rmandaro@arelaw.com

Peter J. Brann
Hannah L. Wurgaft
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566 (general)
(207) 557-8881 (cell)
pbrann@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant*

## Table of Contents

Table of Authorities ........................................................ ii

Preliminary Statement ........................................................ 1

Background ........................................................ 2

Argument ........................................................ 3

I. This Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks Standing ........................................................ 3

II. This Court Lacks Personal Jurisdiction Over Katie May Under New York's Long Arm Statute and the Due Process Clause ........................................................ 14

III. This Court Should Dismiss Plaintiff's ADA Claim Because Plaintiff Failed to State Claim ........................................................ 18

A. Plaintiff's Conclusory ADA Claim is Contradicted by Katie May's

B. Actual Website that Controls over the Complaint's Allegations ........................................................ 18

C. Plaintiff Did Not Notify Katie May of her Claimed Disability and Seek an Accommodation under the ADA Before Filing Suit ........................................................ 19

D. A Website is Not a Place of Public Accommodation under the ADA ............ 21

IV. This Court Should Decline Supplemental Jurisdiction over Plaintiff's State and Local Claims ........................................................ 25

Conclusion ........................................................ 25

## Table of Authorities

**Cases**

*Allah v. New York City*, 2019 WL 6875410 (S.D.N.Y. Dec. 17, 2019) ... 6-7

*Alliance for Env't. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d (2d Cir. 2006) ... 13

*Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ... 5

*American Girl, LLC v. Zembrka*, 2021 WL 1699928 (S.D.N.Y. Apr. 28, 2021) ... 14, 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 6, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. (2007) ... 18-19

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) ... 11

*Best Van Lines, Inc. v. Walker*, 490 F.3d (2d Cir. 2007) ... 15, 16

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. (2017) ... 17-18

*Burger King Corp. v. Rudzewicz*, 471 U.S. (1985) ... 16, 17

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ... passim

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ... 5

*Castillo v. Hudson Theater, LLC*, 412 F. Supp. 3d (S.D.N.Y. 2019) ... 19, 20

*Dawkins v. Brandy Library Lounge, LLC*, 2023 WL 8455896 (S.D.N.Y. Dec. 6, 2023) ... 13

*Dawkins v. Schott NYC Corp*., 2023 WL 8455896 (S.D.N.Y. Sept. 26, 2023) ... 12-13

*Diaz v. Kroger Co*., 2019 WL 2357531 (S.D.N.Y. June 4, 2019) ... 4

*Dominguez v. Banana Republic LLC*, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) ... 8

*Dominguez v. Grand Lux Café LLC*, 2020 WL 3440788 (S.D.N.Y. June 22, 2020) ... 11-12

*Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977 (S.D.N.Y. July 6, 2020) ... 8, 11, 12

*Experian Info. Solutions, Inc. v. Stein Saks, PLLC, et al.*, No. 8:24-cv-01186-FWS-JDE (C.D. Cal. June 3, 2024) ... 13

*Ford v. Schering-Plough Corp.*, 145 F.3d (3d Cir. 1998) ... 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.* S. Ct. 1017 (2021) ... 17

*Fountain v. Karim*, 838 F.3d (2d Cir. 2016) ... 13

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d (11th Cir.), *vacated as moot*, 21 F.4th (11th Cir. 2021) ... 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. (2011) ... 15

*Graves v. Finch Pruyn & Co*., 457 F.3d (2d Cir. 2006) ... 20

*Hanson v. Denckla*, 357 U.S. (1958) ... 17

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022) ... 11

*Hennessey v. Poetica Coffee Inc*., 2022 WL 4095557 (S.D.N.Y. Sept. 7, 2022) ... 4, 5, 9, 11

*Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995) .................. 7

*James v. Gage*, 2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019)................................................ 7, 19

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th (5th Cir. 2021) ............................................. 18

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)......................................... 5, 12

*Krist v. Kolombos Rest. Inc.*, 688 F.3d (2d Cir. 2012)................................................................ 22

*Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) .................... passim

*Lopez v. Capital Grille Holdings, Inc.*, 2020 WL 4735121 (S.D.N.Y. Aug. 14, 2020) ............. 4, 6

*Lopez v. Jet Blue Airways*, 662 F.3d (2d Cir. 2011) .................................................................... 22

*Lopez v. Peapod, LLC*, 2021 WL 1108559 (S.D.N.Y. Mar. 23, 2021) ......................................... 3

*Lopez v. W. Elm, Inc.*, 2020 WL 6546214 (S.D.N.Y. Nov. 6, 2020)....................................21-22

*Maddy v. Life Time Inc.*, 2023 WL 4364488 (S.D.N.Y. July 5, 2023)........................................ 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).............................................................. 4

*Martin v. Second Story Productions, Inc.*, 2024 WL 775140 (S.D.N.Y. Feb 26, 2024)............................................................................................ 4, 7, 8

*Martinez v. MyLife.com, Inc.*, 2021 WL 5052745 (E.D.N.Y. Aug. 16, 2021) ................. 22, 23, 24

*Matzura v. Red Lobster Hospitality LLC*, 2020 WL 3640075 (S.D.N.Y. July 6, 2020) .........13-14

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d (2d Cir. 2009) ........................................ 19

*Mendez v. Apple Inc.*, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019) .................................. 4, 5, 8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d (2d Cir. 1996) ..................................15-16

*Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d (C.D. Cal. 2004)........................................... 21

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)........................................................... 5

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d (2d Cir. 1999)................................................. 24

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d (2d Cir. 2010) ............................................. 14

*Robles v. Domino's Pizza LLC*, 913 F.3d (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019)............ 23

*Shayler v. 1310 PCH, LLC*, 51 F.4th (9th Cir. 2022) .................................................................. 20

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d (S.D.N.Y. 2012).............. 19, 20

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. (2007) .......................................... 14

*Southern Oil of La., Inc. v. Saberioon*, 2021 WL 5180056 (S.D.N.Y. Nov. 8, 2021)........................................................................................... 14, 15, 16

*Starmedia Network, Inc. v. Star Media, Inc.*, 2001 WL 417118 (S.D.N.Y. Apr. 23, 2001) ........................................................................................................ 16

*Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d (6th Cir. 1995) .................................... 23

*Sullivan v. BDG Media, Inc.*, 71 Misc. 3d (N.Y. Sup. Ct. 2021)................................................. 20

*Suris v. Crutchfield New Media, LLC*, 2023 WL 3792512 (E.D.N.Y. June 2, 2023).................... 4

*Suris v. Gannett Co*., 2021 WL 2953218 (E.D.N.Y. July 14, 2021) .......................................... 22

*Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365 (S.D.N.Y. 2022) .............3-4, 21

*Toro v. Gen. Store, LLC*, 2023 WL 4624690 (S.D.N.Y. July 19, 2023) ...................................... 2

*Toro v. Medbar Corp*., 2024 WL 2308804 (S.D.N.Y. May 22, 2024).......................................... 6

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .......................................................... 5, 11

*Velazquez v. Everlast Worldwide, Inc*. 2022 WL 16745767 (S.D.N.Y. Sept. 7, 2022)................. 4

*Velazquez v. Home Controls, Inc*., 2023 WL 4622597 (S.D.N.Y. July 19, 2023) .................... 8, 9

*Velazquez v. Nextphase, Inc*., 2023 WL 4054522 (S.D.N.Y. July 5, 2023) ............................... 12

*Walden v. Fiore*, 571 U.S. (2014)........................................................................................ 16, 17

*Winegard v. Golftec I.P., LLC*, 674 F. Supp. 3d 21, 25 (E.D.NY. 2023) .......................... 9, 13, 20

*Winegard v. Newsday*, 556 F. Supp. 3d (E.D.N.Y. 2021) ............................................. 22, 23, 24

*Zinnamon v. Profound Color, LLC*, 2023 WL 6882415 (S.D.N.Y. Oct. 17, 2023) ..................... 11

*Zinnamon v. Satya Jewelry II, LLC*, 2023 WL 3511123 (S.D.N.Y. Apr. 23, 2023) ........................................................................... 11, 12, 13

**Statutes**

28 U.S.C. § 1337(c) ............................................................................................................. 1, 25

35 N.Y. C.P.L.R. § 302(a) ........................................................................................................... 15

35 N.Y. C.P.L.R. § 302(a)(1)........................................................................................................ 15

42 U.S.C. § 12181........................................................................................................................ 1

42 U.S.C. § 12181(7)(F) ............................................................................................................... 24

42 U.S.C. § 12182(a) ................................................................................................. 1, 19, 21, 24

42 U.S.C. §§ 12181(7)(A)-(L) ...................................................................................................... 22

**Other Authorities**

Rae Ann Varona, *NJ, NY Law Firms Dominate Class Action Filings Since 2021*, Law360 (May 1, 2024)................................................................................................. 9

**Rules**

28 C.F.R. § 36.104...................................................................................................................... 22

Fed. R. Civ. P. 12(b)(1)..................................................................................................... 1, 3, 14

Fed. R. Civ. P. 12(b)(2)......................................................................................................... 1, 18

Fed. R. Civ. P. 12(b)(6) ........ passim

**Constitutional Provisions**

U.S. Const.Art. III ........ 1

**Preliminary Statement**

Defendant Katie May, LLC moves to dismiss the First Amended Complaint (FAC), ECF 16, for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). This motion is supported by the accompanying declaration of Todd Tucker (Tucker Dec.).

*First*, this Court lacks subject matter jurisdiction because Plaintiff Jacqueline Fernandez lacks Article III standing to sue Defendant. Plaintiff failed to assert a sufficiently concrete and particularized injury; Defendant confirmed that the alleged website accessibility issues were not a barrier today, and thus the claimed discriminatory treatment is unlikely to continue; and Plaintiff failed to allege sufficient plausible facts to reasonably infer that she has an intent to return to Defendant's website.

*Second*, this Court lacks personal jurisdiction over Defendant because operating a website visible anywhere in the world is not transacting business in New York under New York's long-arm statute, and because assertion of personal jurisdiction over a claim concerning the website based simply on Plaintiff's decision to view Defendant's website in New York would violate the Due Process Clause.

*Third*, Plaintiff fails to state a claim against Defendant under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.*, because the alleged inaccessibility of its website is contradicted by the actual website itself; because Plaintiff never notified Defendant of her alleged disability and sought an accommodation; and because a website is not a "place of public accommodation" under 42 U.S.C. § 12182(a). If the Court dismisses Plaintiff's federal claim solely for failure to state a claim, it also should decline to exercise supplemental jurisdiction over Plaintiff's state and local claims under 28 U.S.C. § 1337(c) .

**Background**

Plaintiff Jacqueline Fernandez alleges that she is a visually-impaired and legally blind person living in New York County, New York, and brings this lawsuit, on behalf of herself and all others similarly situated against Katie May based on the alleged inaccessibility of its website, www.katiemay.com (Website). FAC ¶¶ 4, 13. According to Pacer, Plaintiff has filed 23 such complaints in the last few months, almost all of which have been dismissed or settled, including 4 other nearly identical suits filed the same day she sued Katie May. *Cf. Toro v. Gen. Store, LLC*, 2023 WL 4624690, *3 n.4 (S.D.N.Y. July 19, 2023) (ADA website case) ("The Court may take judicial notice of the other actions commenced by Plaintiff and her counsel.") (citation omitted). Plaintiff claims that she visited Katie May's Website "multiple times, most recently on January 12, 2024." FAC ¶ 20. In other words, Plaintiff only mentions *one* specific visit to the Website, and does not allege that she even visited the Website again before she filed her amended complaint five months later on June 17, 2024, alleging that the Website is still inaccessible.

Katie May is a family-owned business located in Los Angeles, California. Tucker Dec. ¶¶ 3–4, 8. Katie May is a designer clothing brand known for its evening dresses and bridal gowns, particularly for open-back wedding gowns; it is a luxury brand with a target demographic of 25- to 34-year-old women. *Id*. Katie May primarily sells its designer wear through major retailers and specialty bridal stores, either at their brick-and-mortar stores or on their websites. *Id*. ¶¶ 5–7, 17. The Ashun Dress in Black that Plaintiff claims to want is one of the handful of products that can be purchased directly from Katie May on its website. *Id*. ¶¶ 7, 18–20.

Katie May does not have any real or personal property in New York, and does not have any employees in New York. *Id*. ¶¶ 10–15. Katie May does not target its website, business

solicitations, marketing, or advertising efforts to New York. *Id*. ¶¶ 16, 20–24. Katie May sells a tiny percentage of its products that are then shipped to people in New York. *Id*. ¶ 25.

Katie May encourages customers and potential customers to contact it if they experience accessibility issues; suffice it to say, Plaintiff does not allege, and Katie May has no record of, Plaintiff ever alerting Katie May about any alleged accessibility issues. *Id*. ¶¶ 40–41, 43. The Company's chief operating officer made plain that Katie May is committed to providing access to all members of the public, including blind and visually-impaired individuals. *Id*. ¶ 43.

Concerning the allegations in the lawsuit, although Katie May believed its website was already accessible, it confirmed that its accessibility tool made the Website accessible to blind and visually-impaired persons. Prior to filing of this motion, Katie May confirmed that there were *no* barriers to viewing and purchasing the specific product Plaintiff claimed to be trying to buy, the $295 Ashun Dress in Black (although there currently are only two left, in sizes XS and XL). *Id*. ¶ 33. Kate May also confirmed that this dress is currently available new on multiple websites by major retailers, such as Revolve and Anthropologie, and is currently available used at a discounted priced on multiple websites, such as eBay and Poshmark, none of which are alleged by Plaintiff to be inaccessible. *Id*. ¶¶ 34–36. Against this backdrop, we turn to Katie May's motion to dismiss.

## Argument

### I. This Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks Standing.

When presented with multiple grounds for dismissal, "the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action." *Lopez v. Peapod, LLC*, 2021 WL 1108559, *3 (S.D.N.Y. Mar. 23, 2021) (ADA website case) (quotation omitted); *see also Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022) (court *sua sponte* finding no standing

in ADA website case); *Velazquez v. Everlast Worldwide, Inc*. 2022 WL 16745767 (S.D.N.Y. Sept. 7, 2022) (same) (same Plaintiff's counsel); *Hennessey v. Poetica Coffee Inc*., 2022 WL 4095557 (S.D.N.Y. Sept. 7, 2022) (same). We therefore begin with Plaintiff's lack of standing.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Suris v. Crutchfield New Media, LLC*, 2023 WL 3792512, *2 (E.D.N.Y. June 2, 2023) (ADA website case) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue." *Martin v. Second Story Productions, Inc*., 2024 WL 775140, *2 (S.D.N.Y. Feb 26, 2024) (ADA website case) (quotation omitted). Although the Court must accept as true all material factual allegations in the complaint, "a court may not premise jurisdiction on favorable inferences drawn from the pleadings." *Diaz v. Kroger Co*., 2019 WL 2357531, *2 (S.D.N.Y. June 4, 2019) (ADA website case) (citation omitted). "When deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the complaint." *Id.* (citation omitted).

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Lopez v. Capital Grille Holdings, Inc*., 2020 WL 4735121, *2 (S.D.N.Y. Aug. 14, 2020) (ADA website case) (quotations omitted). "That is because under Article III of the Constitution, federal courts can resolve only 'cases' and 'controversies.'" *Mendez v. Apple Inc*., 2019 WL 2611168, *1 (S.D.N.Y. Mar. 28, 2019) (ADA website case).

In evaluating standing in ADA cases, *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022), effected a sea change in this Circuit in which boilerplate allegations of injury and intent to return were no longer sufficient and were replaced by requiring specific plausible allegations of injury and intent to return, viewing critically the cut-and-paste complaints filed by serial plaintiffs.

*See Poetica Coffee*, 2022 WL 4095557, at *4 ("courts in this circuit have recognized that *Calcano* raised the bar appreciably for adequately pleading standing to seek injunctive relief in ADA cases") (collecting cases). To begin, the *Calcano* court emphasized it is not sufficient to allege barriers existed only when the original complaint was filed; "[a]t all stages of litigation, 'the party invoking federal jurisdiction bears the burden of establishing the elements of standing.'" *Calcano*, 36 F.4th at 74 (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Calcano*, 36 F.4th at 74 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). "A plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that 'he is likely to be harmed again in the future in a similar way.'" *Calcano*, 36 F.4th at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). "Such 'threatened injury must be *certainly impending* to constitute injury in fact, and ... allegations of *possible* future injury are not sufficient.'" *Calcano*, 36 F.4th at 74 (emphasis and ellipsis added by court and quoting *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)).

> In the ADA context, we have held that a plaintiff seeking injunctive relief has suffered an injury in fact when: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location."

*Calcano*, 36 F.4th at 74 (brackets added by court and quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)). Plaintiff cannot satisfy *any* of these three requirements.

"There are no injuries in fact pleaded because the purported injuries described lack all the requisite specificity." *Apple*, 2019 WL 2611168, at *2. Although the complaint alleges in broad-

brush terms that, like her other lawsuits, Katie May failed "to design, construct, maintain, and operate Defendant's website … to be fully accessible to and independently usable by Plaintiff" and others, FAC ¶ 4 (ellipsis added), the Court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'" *Calcano*, 36 F.4th at 75 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the complaint *asserts* that Katie May's website is inaccessible, the Court should not give such unsworn and conclusory assertions any weight, especially when they fail to explain *when* the alleged barriers were encountered, *where* on the Website they were encountered, and *how* they, in fact, prevented Plaintiff from accessing the Website. *See Capital Grille*, 2020 WL 4735121, at *2 ("While the Court will accept non-conclusory factual allegations as true, the Court need not credit a complaint's conclusory statements without reference to its factual context.") (quotation omitted); *see also Toro v. Medbar Corp*., 2024 WL 2308804, *3 (S.D.N.Y. May 22, 2024) (ADA website case) (collecting cases in which courts in this district relied on company affidavits to conclude website was accessible); *cf.* Tucker Dec. ¶¶ 33, 37 (no barrier to viewing and purchasing specific product Plaintiff wanted, and other allegations too vague or incomprehensible even to understand the alleged barrier). This is not a he said-he said dispute, and it can be resolved on a motion to dismiss for lack of standing.

Indeed, the actual webpage (https://www.katiemay.com/products/ashun-in-black) Plaintiff claims is inaccessible refutes her claim. It does not matter that Plaintiff chose not to attach the accused webpage or identify it in his complaint.

> [I]t it is well settled that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment."

*Allah v. New York City*, 2019 WL 6875410, *3 (S.D.N.Y. Dec. 17, 2019) (cleaned up) (quoting *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995)) (other citation omitted). Even on a motion to dismiss under Rule 12(b)(6), if a document relied upon in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the Court need not accept the allegations in the complaint as true. *See James v. Gage*, 2019 WL 1429520, *7 (S.D.N.Y. Mar. 29, 2019) (collecting cases). Because Plaintiff must establish jurisdiction at *all* stages of litigation, *see Calcano*, 36 F.4th at 74, the fact that there is no barrier today to Plaintiff purchasing the allegedly desired dress dooms Plaintiff's lawsuit.

Furthermore, the Court need not take at face value Plaintiff's suggestion that the allegedly desired product—the Ashun Dress in Black—is either uniquely attractive or only available on the allegedly inaccessible website. *See, e.g., Second Story Productions*, 2024 WL 775140, at *3 ("Plaintiffs allege no facts whatsoever … whether they searched for comparable products elsewhere, or why Defendant's products or Website are preferable over comparable products or websites") (ellipsis added); *accord Loadholt v. Dungarees, Inc.*, 2023 WL 2024792, *3 (S.D.N.Y. Feb. 15, 2023) (ADA website case). Plaintiff does not explain why she wanted this particular dress or claim that the two remaining dresses might even fit her. Even if Plaintiff had her heart set on buying the Ashun Dress in Black, she does not explain why she didn't purchase it from the numerous brick-and-mortar stores located in New York, such as Nordstrom or Saks Fifth Avenue, or from the major retailer websites that currently are carrying the dress, such as Revolve and Anthropologie, or from retailers that are selling it used, such as eBay and Poshmark, none of which are alleged by Plaintiff to be inaccessible. Tucker Dec. ¶¶ 5–6, 18–20, 34–36.

In evaluating Plaintiff's claim of injury, "we cannot ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings." *Calcano*, 36 F.4th at 77.

Plaintiff's allegations here mirror those in her other 23 lawsuits, including the 4 nearly-identical lawsuits filed against different defendants the same day as her lawsuit against Katie May. *See also* Rae Ann Varona, *NJ, NY Law Firms Dominate Class Action Filings Since 2021*, Law360 (May 1, 2024) (Plaintiff's counsel filed 1,668 class actions since 2021, more than any other law firm nationwide) (attached). When "carbon-copy complaints" … "use identical language to state the same conclusory allegations," courts can "draw on its judicial experience and common sense" to conclude that the claims of injury are not plausible. *Id*. at 75, 76 (ellipsis added and citations omitted); *see also id*. at 76 ("This backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury."). "And yet Plaintiff (and his counsel) have taken no measure to heed this guidance." *Velazquez v. Home Controls, Inc*., 2023 WL 4622597, *3 (S.D.N.Y. July 19, 2023) (ADA website case) (same Plaintiff's counsel).

As other district courts have noted in these types of cases, "[t]here is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical. But those who live by the photocopier shall die by the photocopier." *Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977, *4 (S.D.N.Y. July 6, 2020) (ADA website case) (quoting *Apple*, 2019 WL 2611168, at *4).

> But the greatest asset of copy-and-paste litigation can also be its greatest weakness. And here, that weakness is fully on display; by failing to allege any nonconclusory facts of a real or immediate threat of injury, Plaintiff lacks standing to pursue injunctive relief under the ADA.

*Dominguez v. Banana Republic LLC*, 2020 WL 1950496, *4 (S.D.N.Y. Apr. 23, 2020) (ADA website case).

Following *Calcano*, courts' healthy suspicion of claims of injury asserted in many, many, virtually identical complaints has only increased. *See, e.g., Second Story Productions*, 2024 WL 775140, at *3 (discounting plaintiffs' claim of injury because they filed 9 "carbon-copy

complaints" the same day "using largely identical language to state the same conclusory allegations" regarding his interest in the defendants' websites and products and his intent to return"); *Poetica Coffee*, 2022 WL 4095557, at *3 (discounting plaintiff's claim of injury because he filed 71 cases within a year with "the same 'cut-and-paste and fill-in-the-blank' approach that existed in *Calcano*"); *Winegard v. Golftec I.P., LLC*, 674 F. Supp. 3d 21, 25 (E.D.NY. 2023) ("With 49 cases filed and counting, the range of [Plaintiff's] interests would have to be unusually substantial, ranging from industrial supplies to etiquette classes to robotics to freediving and spearfishing to instructions for assembling a 'Nashville Hot Chicken' kit he didn't claim to have purchased.") (brackets added). As one court found when it dismissed one of Plaintiff's counsel's other carbon copy complaints, "[t]he frequency of these filings and the 'cut and paste' nature of the conclusory allegations are disturbing." *Home Controls*, 2023 WL 4622597, at *3 (citations omitted).

The Court has good reason to be dubious of Plaintiff's avowed interest in Katie May's "focus on elegant and stylish attire for various occasions" that supposedly sparked her interest in one of the few Katie May designer dresses sold directly on the Website. FAC ¶ 40. Plaintiff also asserts that due, in part, to Katie May's "emphasis on quality and authenticity," … "Plaintiff desired to buy products from the Website." *Id.* (ellipsis added). The reality does not match the rhetoric.

Plaintiff apparently has wide-ranging design tastes. The same day that Plaintiff sued Katie May, she sued AGB Body Jewelry, Inc. (No. 1:24-cv-01590-JPO), alleging identical barriers in a virtually identical complaint. Instead of Katie May's "elegant and stylish attire" and "emphasis on quality and authenticity," FAC ¶ 40. That defendant's website presents a very different esthetic, featuring septum rings, nipple rings, ear plugs, and tongue rings:




Plaintiff has failed to meet her burden of proving the first requirement of standing, namely, that she suffered an actual past injury under the ADA.

Plaintiff not only failed to establish any past injury, but she cannot prove the second requirement to obtain standing in an ADA case, namely, that the alleged discriminatory treatment will continue. *See Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735, *3 (S.D.N.Y. Mar. 8, 2021) (ADA website case). As noted above, Plaintiff did not bother to visit the website again before filing her amended complaint to confirm that the Website was even arguably inaccessible. *See* FAC ¶ 20. Katie May, however, did visit the Website after the original complaint was filed and confirmed instead that there were *no* barriers to viewing or purchasing the Ashun Dress in Black (although, with only two left in sizes XS and XL, they may not be available for purchase for long). Tucker Dec. ¶ 33. Plaintiff's claim of continuing discriminatory treatment is illusory.

Of the three requirements to assert standing, especially following *Calcano*, courts most frequently find in these types of ADA cases that plaintiffs fail to satisfy the third requirement for standing, namely, a reasonable inference of an intent to return to the currently inaccessible place

of public accommodation. *See Arby's*, 2021 WL 878735, at *3–4 (collecting cases); *Poetica Coffee*, 2022 WL 4095557, at *4 & nn. 2–3 (collecting cases applying *Calcano*). "The last factor—intent to return—is obviously essential for the likelihood of future injury required for injunctive relief." *Pizza Hut*, 2020 WL 3639977, at *2. Plaintiff's conclusory allegations fall short of meeting this standard. *See, e.g., Zinnamon v. Profound Color, LLC*, 2023 WL 6882415, *3 (S.D.N.Y. Oct. 17, 2023) (dismissing virtual identical ADA website case) (same Plaintiff's counsel).

"In the virtual world, the third requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website." *Zinnamon v. Satya Jewelry II, LLC*, 2023 WL 3511123 (S.D.N.Y. Apr. 23, 2023) (ADA website case) (same Plaintiff's counsel) (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (ADA case)) (other citation omitted). "In particular, the focus of the third factor—*i.e.*, intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Calcano*, 36 F.4th at 74–75 (quoting *TransUnion*, 141 S. Ct. at 2210). "Thus, the central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the 'totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Calcano*, 36 F.4th at 75 (quotation omitted).

"Intent to return is a 'highly fact-sensitive inquiry.'" *Dominguez v. Grand Lux Café LLC*, 2020 WL 3440788, *3 (S.D.N.Y. June 22, 2020) (ADA website case) (quoting *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015)) (other citation omitted). "To establish this factor, '[t]he plaintiff must allege specific facts that show a plausible intention or desire to return to the place but for the barriers to access.'" *Arby's*, 2021 WL 878735, at *3 (quoting *Grand Lux Café*,

2020 WL 3440788, at *3). "Merely asserting an intent to return to the place of injury some day, when the alleged barriers have been rectified, is insufficient." *Pizza Hut*, 2020 WL 3639977, at *4 (cleaned up) (citations omitted). Similarly, allegations that merely "parrot the court's language" in *Kreisler* are insufficient to prove a plausible intent to return. *Calcano*, 36 F.4th at 76 (citing *Kreisler*, 731 F.3d at 188).

Like *Calcano* and *Kreisler*, Plaintiff's "assertions of proximity and prior visits are vague, lacking in support, and do not plausibly establish that Plaintiffs 'intended to return to the subject location.'" *Calcano*, 36 F.4th at 76 (quoting *Kreisler*, 731 F.3d at 188). If anything, Plaintiff here asserts even *less* than what the Court found inadequate in *Calcano*. *Cf. Calcano*, 36 F.4th at 72–73 (*Calcano* plaintiffs alleged they lived near defendants' stores, had visited them on numerous occasions, and wanted gift cards in braille to be able to return to the stores). In her amended complaint filed *after Calcano* was decided, filed *after* Plaintiff's counsel had been sanctioned by this Court for repeatedly filing boilerplate complaints that did not comply with *Calcano*, *see Zinnamon v. Satya Jewelry II, LLC*, 2023 WL 3511123 (S.D.N.Y. Apr. 23, 2023), filed *after* Katie May raised standing as an issue, and filed *after* this Court gave Plaintiff a chance to amend her complaint to fill in its lacunae, Plaintiff nevertheless alleged the exact same empty platitude that led this Court to sanction Plaintiff's counsel previously: "Plaintiff intends to visit the Website in the near future if it is made accessible." FAC ¶ 47. *See also Velazquez v. Nextphase, Inc.*, 2023 WL 4054522, *5 (S.D.N.Y. July 5, 2023) ("These are exactly the sort of vague 'some day' intentions that *Harty* held do not demonstrate an actual or imminent injury") (ADA website case) (same Plaintiff's counsel). In dismissing a virtually identical complaint filed by Plaintiff's counsel, one court observed: "[t]o find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites ... and bring 50 lawsuits. Standing

requires more." *Dawkins v. Schott NYC Corp.*, 2023 WL 8455896, *4 (S.D.N.Y. Sept. 26, 2023) (ellipsis added by court and quoting *Golftec*, 674 F. Supp. 3d at 25). Past is prologue in this case.

> Mr. Rozenberg and Stein Saks have a business model that appears to rest on filing a high volume of virtually identical complaints. The firm's apparent decision to spend no time developing the facts necessary to allege standing and just hope that it does not get caught is wasting the Court's time. The firm's model must change.

*Satya Jewelry II*, 2023 WL 3511123, at *3; *cf. Experian Info. Solutions, Inc. v. Stein Saks, PLLC, et al.*, No. 8:24-cv-01186-FWS-JDE, ECF 1 (C.D. Cal. June 3, 2024) (RICO complaint against Plaintiff's counsel for filing fake FCRA cases).

The Court need not simply hope that Plaintiff will submit evidence to support her vacuous claim that she intends someday to return to the Katie May website. On the contrary, because standing is a threshold issue, "a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits." *Maddy v. Life Time Inc.*, 2023 WL 4364488, *2 (S.D.N.Y. July 5, 2023) (ordering jurisdictional discovery in ADA website case) (quoting *Alliance for Env't. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006)); *accord Dawkins v. Brandy Library Lounge, LLC*, 2023 WL 8455896, *6 (S.D.N.Y. Dec. 6, 2023) (ordering jurisdictional discovery in ADA website case) (same Plaintiff's counsel). If more were needed, and we doubt there is, "the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quotation omitted). In this case, discovery and an evidentiary hearing are not necessary to conclude, once again, that Plaintiff's counsel failed even to allege standing.

Because the same standing standard applies to Plaintiff's non-ADA claims, those claims fail as well. *See, e.g.*, *Matzura v. Red Lobster Hospitality LLC*, 2020 WL 3640075, *2 (S.D.N.Y.

July 6, 2020) (ADA website case). In sum, Plaintiff's entire complaint should be dismissed for lack of standing and thus lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## II. This Court Lacks Personal Jurisdiction Over Katie May Under New York's Long Arm Statute and the Due Process Clause.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Southern Oil of La., Inc. v. Saberioon*, 2021 WL 5180056, *2 (S.D.N.Y. Nov. 8, 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)) (other citation omitted). "In opposing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *American Girl, LLC v. Zembrka*, 2021 WL 1699928, *3 (S.D.N.Y. Apr. 28, 2021) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)) (other citation omitted). "Specifically, the plaintiff must make a *prima facie* showing that jurisdiction exists by including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Id.* (citations omitted). "However, the Court is not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id* (citations omitted). "[W]hen considering arguments related to personal jurisdiction, the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Id*. (citations omitted).

"Whether a foreign defendant can be sued in a federal court 'is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'" *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Metro. Life Ins. Co. v. Robertson-*

*Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (other citation omitted). "In assessing whether personal jurisdiction exists, courts engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *Southern Oil*, 2021 WL 5180056, at *4 (citations omitted). Plaintiff cannot satisfy either requirement.

There is no doubt that Katie May, a California company, with both its headquarters and principal places of business in California, and without any presence in New York, *see* Tucker Dec. ¶¶ 3, 8–18, is not subject to general jurisdiction in New York. *Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("the paradigm forum for the exercise of general jurisdiction … for a corporation … is … one in which the corporation is fairly regarded as at home") (ellipses added). This leaves specific jurisdiction.

New York's long-arm statute, 35 N.Y. C.P.L.R. § 302(a), does not reach to the limits of the Due Process Clause. *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 244 (2d Cir. 2007). Plaintiffs typically assert in these types of cases that the Court has personal jurisdiction because the defendant "transacts any business" in New York. *See* 35 N.Y. C.P.L.R. § 302(a)(1). Katie May does not "transacts any business" in New York within the meaning of section 302(a)(1).

Katie May lacks any of the usual connections that are used to ground specific personal jurisdiction. *See* Tucker Dec. ¶¶ 8–18. It does not rent, own, or maintain any offices, facilities, or physical structures in New York; it does not employ any individuals in New York; it does not maintain any bank accounts, business records, or documents in New York; it does not maintain any computer servers or other computer hardware in New York; it does not target any business solicitations, marketing, or advertising efforts to New York; and it does not advertise in New York.

Plaintiff's claim concerns Katie May's website, which is visible in New York and everywhere else in the world. *Id.* ¶ 22. That is not enough. Simply operating a website that can be accessed anywhere in the world is insufficient to establish that Katie May is transacting business in New York:

> While there is some contrary authority within the District, several other judges in the District have reached the same conclusion as the Court does here, and have held that simply operating a website, absent more, is insufficient to establish that Defendants "transact business" in New York within the meaning of C.P.L.R. § 302(a)(1) sufficient to subject a defendant to jurisdiction in New York.

*American Girl*, 2021 WL 1699928, at *6 (collecting cases); *see also Best Van Lines*, 490 F.3d at 350 ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.") (quoting *Starmedia Network, Inc. v. Star Media, Inc.*, 2001 WL 417118, *3 (S.D.N.Y. Apr. 23, 2001) ).

The critical element that is missing is any purposeful activity by *Katie May* to target or aim its website at potential New York customers. *See* Tucker Dec. ¶ 23; *cf. Best Van Lines*, 490 F.3d at 246 ("New York courts define transacting business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (cleaned up) (citations omitted). In other words, "[i]t is 'insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts" or on the "unilateral activity" of a plaintiff' with the forum to establish long-arm/specific jurisdiction." *Southern Oil*, 2021 WL 5180056, at *4 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In short, absent some action taken by Katie May to specifically target New York with its website, Plaintiff cannot establish that Katie May "transacts business" under New York's long-arm statute through its website to be able

to assert personal jurisdiction over a claim concerning that website. *See American Girl*, 2021 WL 1699928, at *7.

Even if Plaintiff could establish that the Court has jurisdiction under New York's long-arm statute, that is insufficient. Plaintiff's assertion of personal jurisdiction would not comport with due process. In brief, asserting specific jurisdiction over Katie May concerning its website based solely on *Plaintiff's* unilateral decision to view Katie May's website in New York would violate the Due Process Clause. *See* FAC ¶ 9 ("Plaintiff attempted to utilize" Website in this district).

The Supreme Court has repeatedly required the contact with the forum be the result of the *defendant's* actions, and not the unilateral actions of the plaintiff. The defendant must "purposefully avail itself of the privilege of conducting activities in the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's ties to the forum, in other words, must be ties that "the defendant *himself*" purposefully forged. *Walden*, 571 U.S. at 284 (emphasis added by Court and quoting *Burger King*, 471 U.S. at 475). Furthermore, "[t]he *plaintiff's claims*, we have often stated, *must* arise out of or relate to the *defendant's contacts* with the forum." *Ford Motor*, 141 S. Ct. at 1025 (emphasis added and collecting cases).

The suggestion that selling a minuscule percentage of its products through its website that were then shipped to New York (Tucker Dec. ¶ 25) opens Katie May up to claims not only about those products it sells and ships to New York, but also to the operation of the website itself, runs into the brick wall of Supreme Court jurisprudence. Under the Due Process Clause, "[w]hat is needed—and what is missing here—is a connection between the forum and the *specific* claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017) (emphasis added). "[F]or a court to exercise specific jurisdiction over a claim, there must be an affiliation between

the forum and the underlying controversy.... When there is no such connection, specific jurisdiction is lacking *regardless of the extent of a defendant's unconnected activities in the State*." *Id.* (ellipsis and emphasis added by Court). Thus, it does not matter one whit that Katie May sells an occasional dress or gown from its website that is then shipped to New York. *See* Tucker Dec. ¶ 25. Plaintiff's claim instead concerns the operation of Katie May's website, not its products that Plaintiff concedes she did not buy.

Reading the Supreme Court cases together leads indubitably to the conclusion that the Fifth Circuit reached: "Accessibility alone cannot sustain our jurisdiction. If it could, lack of personal jurisdiction would be no defense at all." *Johnson v. TheHuffingtonPost.com, Inc*., 21 F.4th 314, 320 (5th Cir. 2021). As that court explained, if a defendant could be sued concerning its website anywhere it could be accessed, that would eliminate the distinction between general and specific jurisdiction, and would allow any website operator to be sued anywhere. *Id.* at 323–24. And that would violate the Due Process Clause. In sum, Plaintiff's entire complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## III. This Court Should Dismiss Plaintiff's ADA Claim Because Plaintiff Failed to State a Claim.

### A. Plaintiff's Conclusory ADA Claim is Contradicted by Katie May's Actual Website that Controls over the Complaint's Allegations.

Even if Plaintiff has standing to assert her claims, and even if this Court has specific personal jurisdiction over Katie May, dismissal would still be warranted because Plaintiff fails to state a claim for relief under the ADA. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6**),** "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Even treating Plaintiff's factual allegations as true for purposes of this

motion, the Court's standard demands "more than a mere possibility that a defendant has acted unlawfully." *Id.* "A complaint need not make 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Arby's*, 2021 WL 878735, at *3 (quoting *Iqbal*, 556 U.S. at 678).

As explained above, Plaintiff's broad-brush allegations of inaccessibility are squarely contradicted by the Website itself, *see* Tucker Dec. ¶ 33, which this Court properly should consider and credit over the conclusory allegations in the complaint on a motion to dismiss under Rule 12(b)(6). *See James v. Gage*, 2019 WL 1429520, at *7. In other words, if the Court considers the actual allegedly inaccessible webpage instead of Plaintiff's characterization of that webpage, Plaintiff's inaccessibility claim vaporizes. Plaintiff's claim of inaccessibility is not plausible in the face of the actual challenged Website.

### B. Plaintiff Did Not Notify Katie May of her Claimed Disability and Seek an Accommodation under the ADA Before Filing Suit.

"'[N]otice of the alleged disability ... is an assumed prerequisite' of a Title III claim for failure to make reasonable accommodations." *Castillo v. Hudson Theater, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (ellipsis added by court and quoting *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012)). Thus, the Second Circuit has identified notice as a required element of a failure to accommodate claim in an employment discrimination case. *See, e.g.*, *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). "Reason dictates that in order for a defendant to be liable for discrimination 'on the basis of disability,' 42 U.S.C. § 12182(a) , the defendant must have had adequate knowledge of the plaintiff's disability." *Shaywitz*, 848 F. Supp. 2d at 467.

In addition to notifying Katie May of her alleged disability, Title III of the ADA requires Plaintiff to request *and* Katie May to refuse to make a reasonable accommodation. "That is because

Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the plaintiff was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test." *Castillo*, 412 F. Supp. 3d at 451 (cleaned up and quoting *Shaywitz*, 848 F. Supp. 2d at 467).

Although federal courts have not yet applied (or rejected) this requirement in ADA website accessibility cases, New York state courts have done so under the parallel state statute, relying upon *Castillo* quoted above. *See Sullivan v. BDG Media, Inc*., 71 Misc. 3d 863, 871–73 (N.Y. Sup. Ct. 2021) (website accessibility case). Because "a claim of disability discrimination" under the parallel New York state law "is governed by the same legal standards as govern federal ADA claims," *Graves v. Finch Pruyn & Co*., 457 F.3d 181, 184 n.3 (2d Cir. 2006) (citations omitted), this Court should consider closely the persuasiveness of the parallel state court approach.

Not only is the state approach more faithful to the language of "reasonable accommodation" that pervades the ADA, it would go far in stopping the "perversion of the ADA's purpose and Congress's intent" by the current system of allowing plaintiffs to sue first and ask questions later. *Golftec*, 674 F. Supp. 3d at 26.

> The ADA satisfied the need for meaningful legislation for the protection of individuals with disabilities; however, one of the unforeseen consequences of this statute was the widespread abuse taking form due to the actions of serial ADA plaintiffs.... The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. *Then, rather than simply informing a business of the violations, and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed.... Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter....*

*Id.* (quoting *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022)) (emphasis and ellipses added by court); *see also Golftec*, 674 F. Supp. 3d at 26 ("I am not the first to describe this

phenomenon as a 'scheme of systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements' such that 'the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals).'") (quoting *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 864 (C.D. Cal. 2004)).

As night follows day, requiring Plaintiff to seek and be denied a reasonable accommodation before filing suit leads to dismissal in this case. Plaintiff does not allege in the First Amended Complaint (after being alerted to this issue in the pre-motion letter) that she ever informed Katie May of her alleged disability or sought a reasonable accommodation for that claimed disability. Nor could she. It should be self-evident that if Plaintiff had done so, Katie May would have immediately sought to address her concerns, obviating the basis for this lawsuit. In order to follow faithfully the language and purpose of the ADA, Plaintiff should be required to seek and be denied a reasonable accommodation before filing suit.

**C. A Website Is Not a Place of Public Accommodation under the ADA.**

Although perhaps a fool's errand in light of this Court's ruling in *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365 (S.D.N.Y. 2022), Katie May finally seeks to dismiss this case on the grounds that a website is not a place of public accommodation. Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). Thus, "[t]o state [a] claim for violation of Title III of the ADA, a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Lopez*

*v. W. Elm, Inc*., 2020 WL 6546214, *3 (S.D.N.Y. Nov. 6, 2020) (ADA website case) (quoting *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012)). In this case, calling a website a "place of public accommodation" does not make it so. The question is not whether Congress *could*, or *should*, include websites within the ambit of the ADA, but whether it *did*.

In determining what constitutes a place of public accommodation, we begin, and end, with the statute. "The statute enumerates 12 categories of 'private entities' that 'are considered public accommodations.'" *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011) (citing 42 U.S.C. §§ 12181(7)(A)-(L); *see also Suris v. Gannett Co*., 2021 WL 2953218, *1 (E.D.N.Y. July 14, 2021) (ADA website case) ("In order to be a place of public accommodation, a facility ... must fall within one of these 12 categories.") (ellipsis added by court and quoting 28 C.F.R. § 36.104, Appendix C).

"Under the interpretive maxim of *noscitur a sociis*, a word is known by the company it keeps." *Arby's*, 2021 WL 878735, at *5 (quotation omitted). "Similarly, under the statutory canon of *ejusdem generis*, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. (cleaned up) (quotation omitted). "Considering each of these maxims, every single example listed among the twelve categories in § 12181(7) is a place or establishment[.]" *Arby's*, 2021 WL 878735, at *5; *see also Winegard v. Newsday*, 556 F. Supp. 3d 173, 176–77 (E.D.N.Y. 2021) (ADA website case) (of the 50 examples contained in section 12181(7), at least 49 "indisputably relate to physical places"). "Websites or other virtual businesses are not included explicitly or implicitly among any of the categories." *Martinez v. MyLife.com, Inc*., 2021 WL 5052745, *2 (E.D.N.Y. Aug. 16, 2021) (ADA accessibility case). Based on these maxims, this Court should conclude that a website is not a place of public accommodation.

Although the Second Circuit has not yet decided whether a website is a place of public accommodation, the majority of Circuits addressing this issue have held that websites are *not* places of public accommodation. *See id*. (citing *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *vacated as moot*, 21 F.4th 775 (11th Cir. 2021); *Robles v. Domino's Pizza LLC*, 913 F.3d 898, 905 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) (public accommodations are limited to actual, physical places); *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (same).

To be sure, this Court and others in this Circuit have reached conflicting decisions on this issue, but until the Second Circuit can resolve this issue and decide whether to join the majority of other Circuits, in our view, the more persuasive decisions have concluded that websites are not places of public accommodation. We point in particular to the decision in *Winegard v. Newsday*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021).

There, the court traced the "long history" of the phrase "public accommodation," which "referred to the particular subset of businesses that had heightened duties of service … because of the public nature of their physical facilities." *Id*. at 175 (ellipsis added and citations omitted). The court further noted that Congress deliberately chose not to expand the scope of the ADA beyond physical places even though there were numerous examples of mail order and other types of retailers that had eschewed brick-and-mortar establishments by the time the ADA was passed in 1990. *Id*. at 177–78. Likewise, Congress did not seek to expand the scope of the ADA to websites when it amended the ADA in 2008 even though by then the online economy had exploded and appellate courts had held the ADA was limited to physical places. *Id*. at 178 n.11.

"All this is clear enough even before we get to the statute's use of the phrase 'place of' to modify the term 'public accommodation.'" *Id*. at 179. "Set together in sequence, the collective phrasing leaves no doubt that Section 12182(a) was not meant to reach" websites. *Newsday*, 556 F. Supp. 3d at 179. Drawing on additional sources, the court concluded that "place" ordinarily refers to physical places, not websites. *Id*. at 179–80. The bottom line is that Congress did not include a website within the definition of a place of public accommodation.

"Most district court cases reaching the opposite conclusion in this Circuit have done so in reliance on the Second Circuit's decision in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999)." *Newsday*, 556 F. Supp. 3d at 180. As the *Newsday* court further explained, "*Pallozzi* involved a lawsuit against an insurance company that refused to issue a policy based on the plaintiffs' mental-health diagnoses. The holding did not turn on the definition of 'place of public accommodation' in section 12181(7)." *Newsday*, 556 F. Supp. 3d at 181. Because the insurance office in *Pallozzi* was not only a physical place, but also a place expressly listed in the statute, *see* 42 U.S.C. § 12181(7)(F) , the question was whether the goods and services offered at that physical place of accommodation had to accommodate the plaintiff's disability. Therefore, neither *Pallozzi* nor its progeny mandate or suggest any conclusion as to whether a stand-alone website, such as the one at issue here, is a place of public accommodation. *MyLife.com*, 2021 WL 5052745, at *3; *accord Newsday*, 556 F. Supp. 3d at 182.

In the final analysis, Congress limited the scope of the ADA to a "place of public accommodation," 42 U.S.C. § 12182(a), and a website is neither a "place" nor a "public accommodation," as those terms are used in the statute. In sum, Plaintiff's ADA claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**IV. This Court Should Decline Supplemental Jurisdiction over Plaintiff's State and Local Claims.**

"Ordinarily, pursuant to 28 U.S.C. § 1337(c), when a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Arby's*, 2021 WL 878735, at *7 (cleaned up) (citations omitted). Hence, if Plaintiff's federal claim is dismissed only under Rule 12(b)(6), the Court should also decline supplemental jurisdiction over Plaintiff's state and local accessibility claims.

**Conclusion**

Defendant respectfully requests that its motion to dismiss be granted.

Dated: July 10, 2024

Respectfully submitted,

Richard S. Mandaro
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
(212) 336-8106 (direct)
(516) 650-1080 (cell)
rmandaro@arelaw.com

/s/ Peter J. Brann
Peter J. Brann
Hannah L. Wurgaft
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566 (general)
(207) 557-8881 (cell)
pbrann@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant*