## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jacqueline Fernandez, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 1:24-cv-01592-VEC |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Katie May, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**STEIN SAKS, PLLC**

*/s/Mark Rozenberg*
Mark Rozenberg, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-808-3959
Fax: 201-282-6501

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ....................................................................................................... 1

II.    FACTUAL BACKGROUND ....................................................................................... 2

III.    STANDARD OF REVIEW ......................................................................................... 3

    A.   Rule 12(b)(1): Subject-Matter Jurisdiction and the Kreisler Factors ................................. 4

    B.   Rule 12(b)(2): Personal Jurisdiction and Due Process ....................................................... 5

    C.   Rule 12(b)(6): Failure to State a Claim .............................................................................. 6

IV.    LEGAL ARGUMENT ................................................................................................. 7

    A.   DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HER BURDEN TO SHOW THAT THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER HER CLAIMS. ....................... 7

        i.   Plaintiff Has Alleged Sufficient Facts Evincing Past Injury, the First Kreisler Factor. .. 7

        ii.   Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue, the Second *Kreisler* Factor .................................................................................... 10

        iii.   Plaintiff Has Established Her Intent to Return to the Website, the Third and Final *Kreisler* Factor ...................................................................................................................... 12

        iv.   The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean She Has Not Demonstrated Article III Standing in this Case ................................................. 16

    B.   DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) SHOULD BE DENIED BECAUSE THIS COURT HAS PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE, 35 N.Y.C.P.L.R. § 302(a)(1), AND THE EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANT DOES NOT VIOLATE DUE PROCESS. ................................................................................................................................... 19

    C.   DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) SHOULD BE DENIED BECAUSE THE WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION AND PLAINTIFF NEED NOT REQUEST AN ACCOMMODATION UNDER A DISPARATE IMPACT OR TREATMENT CLAIM. ........................................................... 23

V.    CONCLUSION .......................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)....................................... 5

*Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. June 27, 2003)................................................................................................................ 20

*Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sep. 23, 2021)............................................................................... 5, 8, 13, 16

*Aquino v. SAG-AFTRA*, No. 16-CV-0146(JS)(GRB), 2017 U.S. Dist. LEXIS 32310 (E.D.N.Y. Mar. 7, 2017) ................................................................................................... 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 6

*B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152 (2d Cir. 2016) .................................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 7

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) ................................. 4

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ..................................... 20

*Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345 (S.D.N.Y. 2014)............................ 20

*Buck Constr., LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858 (N.D.N.Y. Sep. 8, 2017)................................................................. 23

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) .................... 13, 17, 18

*Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ..... 4, 5, 8

*Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008)........................................... 22

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)................................. 3, 4

*Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 (S.D.N.Y. Nov. 22, 2022) ................................................................. 9, 14, 16

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)..................... 19

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006).......................................... 6

*Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016) ................................................................ 25

*Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023)............................................ 11, 14, 16, 17, 18, 24

*Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 14, 2023) ................................................................. 9

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ................................... 5

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012)..... 7

*Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015)........................................... 6, 20

*Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331 (S.D.N.Y. 2015) .................................................. 5

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) ................................. 7

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 849 N.Y.S.2d 501 (N.Y. 2007) ................ 20

*Foster v. FEMA*, 128 F. Supp. 3d 717 (E.D.N.Y. 2015) ........................................................... 6, 7

*Heckler v. Mathews*, 465 U.S. 728 (1984) .................................................................................... 8

*Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462 (E.D.N.Y. 2015)................................................ 22

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.
    May 20, 2021) .......................................................................................................................... 9

*Kane v. Blueprint Test Preparation LLC*, No. CV 19-3024 (SJF) (AKT), 2020 U.S. Dist. LEXIS
    155358, at *22-25 (E.D.N.Y. Aug. 24, 2020) ......................................................................... 12

*Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577 (S.D.N.Y. June 10, 2005)......... 20

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)............................................... 4

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195 (N.Y. 1988)
    ................................................................................................................................................ 19

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)............................................ 6, 19

*Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar.
    6, 2023).............................................................................................................................. 13, 15

*Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU, 2015 U.S. Dist. LEXIS 188271 (S.D. Fla. Nov.
    20, 2015)................................................................................................................................. 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555  (1992) .................................................................. 4

*Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July
    5, 2023)....................................................................................................................... 14, 16, 18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................. 5

*Obabueki v. IBM*, 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810
    (S.D.N.Y. Aug. 14, 2001) ....................................................................................................... 21

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86 (2d Cir.
    2010)......................................................................................................................................... 6

*Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141 (E.D.N.Y. 2017)............................ 6

*Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016) ........................... 22

*Rushaid v. Pictet & Cie*, 2016 NY Slip Op 07834, 28 N.Y.3d 316 ....................................... 21, 22

*Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) ..................................................................................................... 11, 13, 16

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ............................................................... 4

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ............... 19

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................ 4

*Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76 (S.D.N.Y. 2022) . 9, 10, 13, 17, 24

*Two's Co. v. Hudson*, No. 13-cv-3338-NSR, 2014 U.S. Dist. LEXIS 30028 (S.D.N.Y. Mar. 6, 2014) ..................................................................................................................... 21

*Walden v. Fiore*, 571 U.S. 277 (2014) ......................................................................... 6

*Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) ............................................................................... 8

*Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244 (E.D.N.Y. July 17, 2012) ..................................................................................................................... 8

*Winegard v. Golftec I.P., LLC*, 674 F. Supp. 3d 21 (E.D.NY. 2023) ................................... 9, 10

## Statutes

42 U.S.C. § 12182 ..................................................................................................... 1

N.Y. C.P.L.R. § 302(a)(1) ..................................................................................... 5, 19

N.Y.C. Admin. Code § 8-101 .................................................................................... 1

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 4

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 6

I.    **INTRODUCTION**

Defendant Katie May, LLC ("Katie May") moves under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* First, Defendant argues that this Court lacks subject-matter jurisdiction because Plaintiff Jacqueline Fernandez ("Fernandez") does not have Article III standing under the ADA. Second, Defendant argues that this Court cannot exercise personal jurisdiction over Defendant under New York's long-arm statute or the Due Process Clause of the United States Constitution. Finally, Defendant otherwise argues for dismissal because Plaintiff has failed to state a claim upon which relief may be granted, specifically by arguing that Plaintiff's claims are moot due to the Website being fixed, that Plaintiff failed to request a reasonable accommodation prior to filing suit, and that the Website is not a place of public accommodation within the meaning of the ADA.

As will be discussed further below, this Court should deny Defendant's Motion to Dismiss in its entirety. First, this Court has subject-matter jurisdiction over this case because Plaintiff has satisfied the jurisdictional requirements of Article III by alleging (i) a particularized interest in the Ashun dress in black that was being offered for sale on Defendant's Website and the specific reasons why she desired to purchase that dress from the Website directly; (ii) the specific accessibility issues she encountered while attempting to complete her purchase through the Website; and (iii) an intent to return to the Website and complete her purchase once the accessibility issues are remediated. Second, Plaintiff has established that New York has personal jurisdiction over Defendant by way of New York's long-arm statute, as Defendant transacts business in New York by offering to sell and ship its merchandise directly to consumers within the

1

state, and because Plaintiff's claims arise out of those business transactions. Further, Plaintiff has shown that exercising personal jurisdiction over Defendant in this case comports with the Due Process Clause. Finally, despite Defendant's assertions to the contrary, (1) the accessibility issues that Plaintiff faced while attempting to purchase the Dress on the Website have not been remediated; (2) requests for reasonable accommodation are not prerequisites to filing suit when bringing disparate treatment or disparate impact claims under the ADA; and (3) a clear majority of courts in this jurisdiction, including this Court, have held that the ADA applies to websites such as Defendant's. For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

## II.   FACTUAL BACKGROUND

Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. *See* Amended Complaint ("AC"), ¶ 2. For screen-reading software to function, the information on a website must be capable of being rendered into text. *Id*. at ¶ 33. If the website content is not capable of being rendered into text, a blind or visually-impaired user is unable to access the same content that is available to sighted users. *Id*. Defendant owns and operates the website, www.katiemay.com (the "Website"). *Id.* at ¶ 4. The Website is an online retail website that offers Defendant's products for sale to the general public and offers shipping to consumers in all fifty states. *Id.* at ¶ 38.

Plaintiff first discovered the Website through Instagram and followed the link from Defendant's social media account to the Website. *Id.* at ¶ 23. Plaintiff desired to purchase a specific item from the Website, the Ashun dress in black (the "Dress"). *Id.* at ¶ 21. The Website purported its products to be of especially high-quality and Plaintiff became particularly interested in purchasing an item designed by Defendant. She was especially interested in purchasing the Dress because she was looking for a versatile, high-quality, strapless dress that would be suitable for

various events and parties. *Id.* at ¶ 22. In addition to her desire to purchase the Dress from the Website, Plaintiff wished to sign up for Defendant's newsletter, which the Website claims to send subscribers "special discounts and offerings." *Id.* at ¶ 19; *see also* www.katiemay.com. Signing up for Defendant's newsletter would have encouraged Plaintiff to return to the Website and purchase additional goods in the future, should a sale or other promotion be offered by Defendant.

Plaintiff then attempted multiple times prior to filing suit, and again in August 2024, to shop on Defendant's website and to purchase the Dress using her screen-reading software, but she encountered multiple barriers that have denied her the full and equal access to Defendant's online goods, content, and services. *Id.* at ¶¶ 43-46; *see also* Exhibit A (Plaintiff's Affidavit) at ¶¶ 10-12.[1] Due to Defendant's failure to build the Website in a manner that is compatible with screen-reading programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the Dress from the Website. AC at ¶ 24. Plaintiff's Amended Complaint specifically describes the ways in which the Website was incompatible with her screen-reading software, and her supplemental affidavit describes the ways in which the website is *still* incompatible with her screen-reading software. *Id.* at ¶ 45; Exh. A at ¶ 13. Despite this direct harm and frustration that Plaintiff has already suffered due to the inaccessibility of the Website, Plaintiff nevertheless intends to access the Website in the future not only to purchase the Dress, but also to sign up for the newsletter which would encourage her to return to the Website during a promotion or sale and make additional purchases. AC at ¶ 29; Exh. A at ¶ 15.

## III.    STANDARD OF REVIEW

---

[1] This Court may consider Plaintiff's supplemental affidavit in a fact-based challenge to subject-matter jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("In opposition to [a fact-based challenge to subject-matter jurisdiction], the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction.")

## A. Rule 12(b)(1): Subject-Matter Jurisdiction and the Kreisler Factors

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert in a motion to dismiss that a plaintiff lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To assert federal subject-matter jurisdiction, a party must have Article III standing. *Carter*, 822 F.3d at 55. Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When a plaintiff seeks injunctive relief, she must also prove that the identified injury in fact presents a "real and immediate threat of future injury," often termed a "likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (quoting *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). These are what are now referred to as the *Kreisler* factors. "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to

utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021) (citing cases).

### B. Rule 12(b)(2): Personal Jurisdiction and Due Process

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to assert in a motion to dismiss that a plaintiff lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In order to establish personal jurisdiction at the Rule 12(b)(2) stage of proceedings, a plaintiff must only allege "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996). As with a plaintiff's factual allegations, a plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). "Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings." *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *7 (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013)).

In determining whether personal jurisdiction is proper, courts engage in a two-part inquiry. *Id.* "First, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state." *Id.* (citation omitted).

> Here, the relevant inquiry centers on New York's long-arm statute, which provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R. § 302(a)(1). Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity."

*Id.* (citation omitted).

Second, if the court determines that the laws of the forum state confer personal jurisdiction, it must then consider whether the exercise of personal jurisdiction comports with due process. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013). "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 169. In other words, personal jurisdiction does not violate due process when a defendant is "haled into court in a forum State based on his own affiliation with the state[.]" *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The Second Circuit has noted that it would be the "rare" case where personal jurisdiction was proper under New York's long-arm statute but not under a due process analysis. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

### C. Rule 12(b)(6): Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to assert in a motion to dismiss that a plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The complaint must allege "a plausible set of facts sufficient to raise a right to relief above the speculative level. *Foster v. FEMA*, 128 F. Supp. 3d 717, 722 (E.D.N.Y. 2015) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)).

A claim is plausible on its face when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141, 146 (E.D.N.Y. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). This does not require a heightened pleading of factual specifics. *See*

*Foster*, 128 F. Supp. 3d at 722 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a complaint that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement" will not suffice. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 161 (E.D.N.Y. 2012) (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (citation omitted).

## IV.  LEGAL ARGUMENT

### A. DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HER BURDEN TO SHOW THAT THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER HER CLAIMS.

#### i.  Plaintiff Has Alleged Sufficient Facts Evincing Past Injury, the First Kreisler Factor.

Plaintiff has adequately alleged past injury, the first *Kreisler* factor, by alleging that on multiple prior occasions, while attempting to access the Website and purchase the Dress, she "encountered barriers that denied the full and equal access to Defendant's online goods, content, and services." *See* AC at ¶¶ 20, 28. Those barriers include the "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse," in addition to "a host of broken links" which left Plaintiff with no ability "to navigate or otherwise determine where one is on the website once a broken link is encountered." *See id.* at ¶¶ 28, 43-45. "These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do." *Id.* at ¶ 46.

The Plaintiff *has* suffered harm by the very nature of discrimination itself. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017) ("If a barrier violating [the

ADA] standards relates to a plaintiff's particular disability, it is understood to impair the plaintiff's full and equal access, which constitutes discrimination under the ADA [and] is considered to satisfy the 'injury-in-fact' element[.]"); *see also Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012) ("Being subjected to discrimination in violation of [the ADA's] provisions is itself an injury sufficient to confer Article III standing."); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("Discrimination itself, by perpetuating 'archaic and stereotypic' notions or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

These allegations are sufficient to survive a 12(b)(1) motion. *See Angeles*, 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff explained in a supplemental affidavit that "(1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Camacho,* 2019 U.S. Dist. LEXIS 209202, at *26 (past injury established where plaintiff alleged that the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software."); *Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022) (plaintiff adequately alleged past injury by identifying access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *Chalas v. Barlean's Organic Oils, LLC*,

No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *6 (S.D.N.Y. Nov. 22, 2022) (allegations that plaintiff encountered various access barriers sufficient to establish past injury, including that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.").

Nor is it necessary to allege these barriers with any more detail given the low pleading threshold of Rule 8. *See Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913, at *7 (S.D.N.Y. Aug. 14, 2023) ("Further detail on which locations on the website are out of compliance with the applicable statutes is not necessary at this stage because a complaint need not provide 'detailed factual allegations' to survive a motion to dismiss."); *see also Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021) (concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury); *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022) (past injury established where plaintiff alleged that he encountered "certain difficulties" in navigating the website).

Defendant attempts to draw a connection between the case at hand and *Winegard v. Golftec I.P., LLC*, which stated the following: "[w]ith 49 cases filed and counting, the range of [Plaintiff's] interests would have to be unusually substantial, ranging from industrial supplies to etiquette classes to robotics to freediving and spearfishing to instructions for assembling a 'Nashville Hot Chicken' kit he didn't claim to have purchased." 674 F. Supp. 3d 21, 25 (E.D.NY. 2023). Defendant points to Plaintiff's additional ADA website accessibility lawsuit against AGB Body

Jewelry and proclaims that AGB Body Jewelry has jewelry pieces with "a different aesthetic" than Katie May that includes "septum rings, nipple rings, ear plugs, and tongue rings." *See* Defendant's Motion, pg. 9-10. However, in her other suit, "Plaintiff wished to purchase a new pair of hoop earrings, and wanted to find a store offering a wide range of classic hoop earrings that are currently trendy and are suitable for many garments and styles." No. 1:24-cv-01590-JPO, Dkt #1, ¶ 20.

In *Winegard*, the Court pointed out with incredulity how unusual and substantially varied Winegard's interests were, from "skiing… [to] etiquette classes" *Winegard*, 674 F. Supp. 3d at 25. Here, however, it does not stretch the imagination that to go along with a classic, stylish black dress Plaintiff wanted to purchase, she wanted to also purchase a classic, stylish pair of hoop earrings from AGB Body Jewelry, and that in both cases she ran into accessibility issues while perusing these websites. Plaintiff is simply interested in fashion and style, and a dress and earrings are both personal style and appearance-based items. This is completely unlike the substantially varied activities and services Winegard attempted to purchase in his cases. Thus, regardless of Defendant's transparent attempt to characterize Plaintiff's difficulties in navigating the Website as procedural violations divorced from any real harm, sufficient allegations of past injury have clearly been established here.

### ii.    Plaintiff Has Established the Reasonable Inference that Discriminatory Treatment Will Continue, the Second *Kreisler* Factor.

Plaintiff has also alleged the reasonable inference that discriminatory treatment will continue, the second *Kreisler* factor. When Plaintiff visited the Website multiple times prior to filing suit, and again in August 2024, to purchase the Dress, she encountered access barriers that Defendant has failed to rectify. AC at ¶¶ 19-21, 24, 43-45; Exh. A at ¶ 12-13. These allegations are sufficient to establish the second *Kreisler* element. *See Tavarez*, 641 F. Supp. 3d at 82 ("reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited

Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022); *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at *16 (S.D.N.Y. July 5, 2023).

Even though in accordance with *Tavarez*, these allegations are sufficient to establish the second *Kreisler* element, Plaintiff will now turn to the Tucker Affidavit, as part of and referenced in Defendant's Motion. Todd Tucker, "Chief Operating Officer of Katie May, LLC" states that "[a]lthough the website is not the focal point of our business model, we have taken steps to make the website fully accessible to blind and visually-impaired individuals… For example, in 2020, Katie May installed an accessibility tool on its website. The tool is created and maintained by Accessibly." *See* Affidavit of Todd Tucker, ¶¶ 2, 27-28. Tucker goes on to attest that he "personally reviewed the complaint and the First Amended Complaint in this action to understand the alleged deficiencies on the website." *Id*. at ¶ 32.

Notably, Tucker does not assert that he is an expertise in ensuring, providing, or maintaining website accessibility for the blind and visually impaired. Neither does Tucker indicate that the Defendant hired an accessibility expert of any kind, at any point after this lawsuit was filed, to assess and rectify the specific accessibility issues Plaintiff attested she encountered on the website. Instead, Tucker simply makes self-serving proclamations and relies on the Accessibly widget to attest to the Website's current functionality.

Contrary to Tucker's assertions however, Plaintiff has attested in her signed supplemental affidavit that the Website is still not accessible to her and she encounters the exact same issues that she encountered in January 2024. This is not surprising given that Tucker is a sighted user who did not audit the Website using screen-reading software but merely attempted to use it in a way

that a sighted user would have. These types of self-serving assertions from someone who is not an expert in website accessibility often come up in mootness arguments from a defendant. In *Longhini v. W. 97 Corp.*, for example, the court stated the following: "Defendant's president is not an expert on ADA-compliance, and her photographs of the facility, although persuasive, do not definitively demonstrate that the facility is actually ADA-compliant. Therefore, it is not clear that this action is moot." No. 1:15-cv-22874-UU, 2015 U.S. Dist. LEXIS 188271, at *6 (S.D. Fla. Nov. 20, 2015). Generally speaking, in other cases in the Second Circuit where the Defendant successfully argued that the accessibility issues are not reasonably likely to continue, the Defendants took steps that went much further than the conclusory, self-serving statements that Tucker has asserted in his affidavit. For example, in *Kane v. Blueprint Test Preparation LLC*, the Court discussed the comprehensive policy changes to provide close captioning as required under the ADA, including a revised employee handbook, employee training, and the creation of a new role, an ADA Coordinator, whose job it would be to oversee continued implementation of ADA accommodations, along with documented examples of compliance. No. CV 19-3024 (SJF) (AKT), 2020 U.S. Dist. LEXIS 155358, at *22-25 (E.D.N.Y. Aug. 24, 2020).

In this case, Tucker makes simple proclamations of Defendant's continuing intent to comply with ADA-based website accessibility requirements. These proclamations from a non-expert, without any specific, factual evidence in support, are less than convincing, especially in light of Plaintiff revisiting the Website upon being informed that it had been "fixed," only to face the same issues that she faced months ago. Tucker's assertions that the Website worked fine for him as a sighted user do nothing to dispel the fact it is reasonably likely Plaintiff will continue to face the specifically-detailed accessibility problems on Defendant's website.

     iii.   **<u>Plaintiff Has Established Her Intent to Return to the Website, the Third and Final *Kreisler* Factor</u>**

Defendant relies heavily on the Second Circuit's holding in *Calcano v. Swarovski North America Ltd.* to establish that Plaintiff has not sufficiently evinced her intent to return to the Website once the accessibility barriers are remediated. 36 F.4th 68, 76 (2d Cir. 2022). Indeed, prior to *Calcano* and its immediate aftermath, courts consistently found Article III standing based on allegations establishing the basic facts of intent to return. *See Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano*, which "'fail[ed] to provide *any* details about [plaintiffs'] past visits,'" and finding that the amended complaint sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of [the product] that he finds attractive."); *see also Sanchez*, 2022 U.S. Dist. LEXIS 51247 at *5 (allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter [the plaintiff] from visiting the Website in the future, and that [the plaintiff] intends to visit the site again in the future when the barriers are cured" sufficient to establish intent to return to the website where the plaintiff additionally "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *Angeles*, 2021 U.S. Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients.").

Courts in this jurisdiction continue to find standing where the allegations, although perhaps not novel-length, nevertheless establish the factual basis for the plaintiff's interest in the website. *See Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023) (finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt ... where Defendant is an apparel retailer and

where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (distinguishing *Calcano* and finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (distinguishing *Calcano* and finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023) (finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Plaintiff's allegations are no less persuasive here. Like *ShirtSpace*, the Website is a retail website that offers a wide range of clothing and accessories, with a focus on elegant and stylish attire for various occasions designed to cater to diverse fashion preferences, like Plaintiff's. *See* AC at ¶ 23. Defendant indicates on its website that it is dedicated to providing contemporary fashion products, with an emphasis on quality and authenticity, and therefore Plaintiff desired to buy the Dress and attempted to do so on several occasions, but was unsuccessful due to the Website's accessibility barriers. *Id.* at ¶¶ 19-21, 23, 43-45. *Shirtspace* suggests that establishing a nexus between the Website *in a retail environment* and an interest in a particular

item for sale there makes a plaintiff's intent to return plausible. 2023 U.S. Dist. LEXIS 36924 at

*6-7. In the context of a retail website like Defendant's that offers various pieces of attire for sale,

Plaintiff's interest in style and fashion items and her desire to purchase a specific dress offered for

sale there makes it plausible that she will return to the Website once it is remediated.

Moreover, Plaintiff has alleged *why* she is interested in the Dress and the Website in

particular. Plaintiff alleges that she wants that dress for party-wear as she frequents events at which

the Dress would be appropriate. *See* AC at ¶ 22; Exh. A at ¶ 9. Not only that, Plaintiff wishes to

use Defendant's Website to sign up to receive product updates, product news, and receive special

promotions not available in other retailers. AC at ¶ 19. Defendant's argument that it mostly focuses

on business-to-business sales to other retailers, and the suggestion that Plaintiff can look elsewhere

for the same dress in the same color is completely unavailing. *See* Defendant's Motion, pg. 7.

Defendant failed to present any supporting case law that requires a visually-impaired Plaintiff to

first try other vendors' websites, or brick-and-mortar stores, to find the same item, and assess

whether those other vendors also have ADA-accessibility issues, before filing an accessibility suit.

To assert that a disabled plaintiff ought to undergo these additional steps in order to procure the

same item that a sighted person could purchase directly from the website is, in itself, disparate

treatment in violation of the ADA. Therefore, Defendant's argument that Plaintiff (unlike a sighted

consumer) should have tried other retailers like Anthropologie, Revolve, Poshmark or EBay[2] first

to see if the same dress is available in her size and her desired color is completely tone-deaf. *Id*.

Plaintiff's allegations establish a clear through-line between the product identified on the

Website and Plaintiff's long-standing personal interest in fashion and style. That interest is abutted

---

[2] It should be noted that none of the alternative options presented by Defendant offer the same item that Plaintiff sought to purchase through the Website. Anthropologie and Revolve do not offer the Dress in Plaintiff's desired color (black); EBay and Poshmark are second-hand retailers and do not offer "new" items directly from the manufacturer.

by a no-nonsense approach to the product at issue – Plaintiff is interested because she wants to buy quality, stylish and elegant party wear attire – and the Dress fits that description. *See* AC at ¶ 21. This is sufficient, on its own, to establish intent to return. *See Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (plaintiff's alleged interest in stomach repair supplements for her cousin); *Sanchez*, 2022 U.S. Dist. LEXIS 51247 at *5 (plaintiff additionally "makes note of his particular interest in pistachio nuts").

Moreover, Plaintiff has alleged what in particular led to her interest in the Dress specifically, *i.e.* she desired a versatile, black, strapless dress for party-wear. *See* AC at ¶¶ 21-22; Exh. A at ¶ 9. This is similar to the "distinctive products" that warrant a finding of standing in this jurisdiction. *See Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (alleging a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (noting the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy*, 2023 U.S. Dist. LEXIS 115503 at *13-14 ("the website offers a specific oil, the Morrocan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection."); *Angeles*, 2021 U.S. Dist. LEXIS 182317 at *5 (plaintiff "alleges that she … is interested in Defendant's products because they are free of chemicals and other unnatural ingredients.").

### iv.   The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean She Has Not Demonstrated Article III Standing in this Case.

Defendant argues that *Calcano* all but forecloses Plaintiff's claims because, as a serial litigant, Plaintiff does not have any real interest in the websites she has sued, but is only interested in exacting compliance with the ADA. But *Calcano* is distinguishable from the facts of this case.

16

In that case, the Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing. *Id.* at 76-77.

Defendant points to no error in the Complaint, or any of the other ADA claims Plaintiff has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist, they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in *Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff firms, whether they bring personal injury claims or intellectual property claims such as copyright infringement – Defendant has failed to point to any other aspect of *Calcano* that would call into question the veracity of Plaintiff's allegations. Whatever may be said for Plaintiff's status as a serial litigator – asserted on the basis that Plaintiff has filed other ADA claims, the very notion of which seems faintly absurd – none of the other troubling aspects of *Calcano* are present here.

Courts in this jurisdiction have recognized these distinctions in finding standing. *See Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions"' of intent to return to [d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning intent to return are significantly more detailed[.]"); *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the

plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants."). *Calcano* does not stand for the broader, completely untethered proposition that any ADA complaint, no matter the allegations or the detail provided, must be summarily dismissed if it is contemporaneous with other ADA complaints of a similar nature or based on a similarly-worded complaint. As the Second Circuit noted, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the "totality of all relevant facts,"' the plaintiff *plausibly* alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (emphasis added). Considering the totality of facts alleged in the Amended Complaint and the supplemental affidavit, Plaintiff has met that burden here.

Neither is Defendant's reliance on Plaintiff's status as a "serial litigator" persuasive. The fact that singular plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually-impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, 2023 U.S. Dist. LEXIS 115503 at *15-16 (rejecting the defendant's arguments that filing over 70 complaints made the plaintiff's allegations of intent to return implausible and reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at *10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the

internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites."). Defendant's attempts to twist this basic reality into something other than what it is reflects a profound ignorance of the access barriers that the visually impaired encounter on a daily basis.

**B. DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) SHOULD BE DENIED BECAUSE THIS COURT HAS PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE, 35 N.Y.C.P.L.R. § 302(a)(1), AND THE EXERCISE OF PERSONAL JURISDICTION OVER DEFENDANT DOES NOT VIOLATE DUE PROCESS.**

Defendant claims that Plaintiff has averred *no* facts establishing that Defendant "transacts business" in New York, subjecting it to New York's long-arm statute, 35 N.Y. C.P.L.R. § 302(a)(1). And yet, as Defendant's website demonstrates and the Tucker Affidavit admits, Defendant conducts business worldwide, including shipping its products (albeit a small percentage of its overall sales) to consumers in the State of New York. *See* Tucker Affidavit, at ¶ 25. Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary … who … transacts any business within the state or contracts anywhere to supply goods or services in the state." 35 N.Y.C.P.L.R. § 302(a)(1).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). This is a "single act statute," *i.e.* "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195 (N.Y. 1988)). "Purposeful activities" are

defined as "those with which a defendant, through volitional acts, avails itself of the privileges of conducting activities within the forum State." *Eades*, 799 F.3d at 168 (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26, 849 N.Y.S.2d 501 (N.Y. 2007)); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-247 (2d Cir. 2007) ("With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'").

"A defendant's internet contacts may establish jurisdiction under § 302(a)(1), depending on the 'nature and quality' of commercial activity that a defendant conducts." *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 357 (S.D.N.Y. 2014) (citing *Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577, at *8 (S.D.N.Y. June 10, 2005)); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224, at *7 (S.D.N.Y. June 27, 2003); *Best Van Lines*, 490 F.3d at 251. "However, courts in the Southern District 'have identified a spectrum of potential website contacts with a forum state, ranging from 'passive' websites, which merely display information and therefore are unlikely to support jurisdiction, to websites which clearly allow defendant to transact business in the forum state over the internet, and thus sustain jurisdiction.'" *Brown*, 57 F. Supp. 3d at 357 (quoting *Knight-McConnell*, 2005 U.S. Dist. LEXIS 11577, at *8 (internal citations omitted)). In the middle are "websites that are 'interactive insofar as [they] permit[] the exchange of information' and may subject a defendant to personal jurisdiction, depending on 'the level and nature of the exchange.'" *Brown*, 57 F. Supp. 3d at 357.

With that said, "[a] 'transaction' of business under this section does not require an exchange of money, goods or services, or the formation of a contract. Rather, a range of

'purposeful' activity is considered by the courts, and the ultimate determination is based on the 'totality of the circumstances.'" *Obabueki v. IBM*, 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810, at *8 (S.D.N.Y. Aug. 14, 2001) (citations omitted). However, the Website at issue in the instant matter is not a "passive" or "intermediate" website. It does more than simply exchange information; rather, it allows Defendant to *sell* its products to consumers in the State of New York. It is widely recognized that websites which allow purchases of goods and services to be made directly online fall on the "fully interactive" end of the spectrum where courts routinely find personal jurisdiction. *See e.g. Two's Co. v. Hudson*, No. 13-cv-3338-NSR, 2014 U.S. Dist. LEXIS 30028, at *12 (S.D.N.Y. Mar. 6, 2014) ("On the other end are websites that are fully interactive, such as in Chloé, where consumers can access the site from anywhere and purchase products. Such websites are commercial and courts will generally confer jurisdiction over the defendant based on the website."). Were this a products liability case and Plaintiff was suing Defendant because it sold a defective product which caused Plaintiff harm, there would be no question that the long-arm statute applies. This case is no different. Defendant cannot escape liability in 49 of the 50 states, simply because it does not operate any physical locations or employ any persons in those states. To assert otherwise is simply ludicrous.

This business activity – Defendant selling its products to consumers in New York through the Website – is substantially related to the claims of this case, the second element of New York's long-arm statute. "To satisfy the second prong of CPLR 302 (a) (1) that the cause of action arise from the contacts with New York, there must be an '"articulable nexus" … or "substantial relationship"' … between the business transaction and the claim asserted'" *Rushaid v. Pictet & Cie*, 2016 NY Slip Op 07834, 28 N.Y.3d 316, 329 (citation omitted). "This inquiry is 'relatively permissive.'" *Id.* (citation omitted). Neither does this require a causal link, "but merely 'a

relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Id.* "'[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute." *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015) (citation omitted). "The claim need only be 'in some way arguably connected to the transaction.'" *Rushaid*, 28 N.Y.3d at 329 (citation omitted).

It is already well established that "'where at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted' supports a finding of jurisdiction under the statute." *Ingenito*, 89 F. Supp. 3d at 477 (citation omitted). The primary element of any ADA and NYCHRL claim is unequal access. *See Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 198-99 (S.D.N.Y. 2016) (citing to *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)) ("To state a claim under Title III, [Plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) *that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide.*") (emphasis added). This necessarily entails a comparison of the disabled person's experience with that of a nondisabled person in being denied "a full and equal opportunity to enjoy the services defendants provide."

Plaintiff's failed attempts to make purchases on the Website are the *sine qua non* of her discrimination claim. Without the Website's accessibility failures, there would be no disparate treatment, no discrimination, and no lawsuit. However, Plaintiff attempted to use the same interactive portions of the Website to purchase a product that nondisabled persons have

successfully utilized in the past. Plaintiff's attempt to take advantage of Defendant's offer to sell and ship its product to her in New York is directly related to her discrimination claim. The fact that no transaction was ever consummated is part and parcel of Plaintiff's claims – if she were able to finalize her purchase, there would be no need for a lawsuit to exact compliance with the ADA. Thus, this Court should find that Defendant did conduct a "business transaction" in New York by offering to sell and ship its products directly to consumers within the state. It is the offering itself, not the finalization of the purchase, that constitutes a "business transaction" subjecting Defendant to New York's long-arm statute.

Having shown that personal jurisdiction is appropriate because Defendant purposefully directed business activity to consumers in the state of New York and that Plaintiff's claims are directly related to that business activity, then due process is also satisfied. Courts have found due process satisfied under similar circumstances. *See Buck Constr., LLC v. Murray Corp.*, No. 6:17-CV-275 (FJS/TWD), 2017 U.S. Dist. LEXIS 145858, at *13 (N.D.N.Y. Sep. 8, 2017). In *Buck Construction*, the court concluded, "[a]lthough Defendant argues that its New York sales and shipments represent just a tiny fraction of its overall numbers, i.e., 2.78% of total revenue and 2.68% of total shipments, Defendant is clearly aware that its products enter New York and are being used in New York." *Id.* The same is true here where, although Defendant may argue that its New York sales is but a tiny fraction of its annual revenue, Defendant is nevertheless obviously aware that it ships products to consumers in New York. There is nothing "unfair" about Defendant being haled into court in a state in which it purposely sells and ships its products. Therefore, exercising personal jurisdiction does not violate due process.

### C. DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) SHOULD BE DENIED BECAUSE THE WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION AND PLAINTIFF NEED NOT REQUEST AN

**ACCOMMODATION UNDER A DISPARATE IMPACT OR TREATMENT CLAIM.**

First, Defendant argues, contrary to this Court's prior holding, that the Website is not a place of public accommodation within the meaning of the ADA. The issue of whether the Website is a place of public accommodation is a legal issue that was settled by this Court in *Taverez v. Moo Organic Chocolates, LLC*. This Court eloquently discussed the maxims of statutory construction and ultimately found that a place of public accommodation, although ambiguous, necessarily includes websites such as the one at issue here. *Id.* Repeating this Court's own reasoning to itself is not necessary, but suffice to say exempting commercial websites such as this one from liability would offend the very purpose of the ADA. This Court should not overturn its prior ruling on this issue.

Second, Defendant argues that Plaintiff's claims should be dismissed because she failed to first request a reasonable accommodation prior to bringing suit. The Second Circuit has held that "[e]xclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). In this case, Plaintiff alleges that systematic accessibility barriers on the Website negatively impact the ability of all visually-impaired users who rely on screen-readers to access the Website to purchase goods. "Where a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, this type of claim is appropriately evaluated under the disparate impact framework." *Davis*, 2023 U.S. Dist. LEXIS 115542 at *25-26. Therefore, under the sound reasoning of *Davis*, Plaintiff's allegations that Defendant's failure to ensure the accessibility of the Website led to the denial of goods and services to visually impaired persons is enough to satisfy the pleading requirements of an ADA claim.

In arguing otherwise, Defendant is seeking to rewrite the requirements of 42 U.S.C. § 12182(a) and impose a heretofore unknown pre-litigation requirement under Title III. No such requirement exists. *See Aquino v. SAG-AFTRA*, No. 16-CV-0146(JS)(GRB), 2017 U.S. Dist. LEXIS 32310, at *12 (E.D.N.Y. Mar. 7, 2017) (noting the elements of a Title III claim). Black letter law allows Plaintiff to bring a claim under § 12182(a) by alleging one of several *alternative* theories of liability: "'disparate treatment, disparate impact, *or* failure to make a reasonable accommodation.'" *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016) (citation omitted). Reasonable accommodation claims are just one of these claims, not an absolute requirement prior to filing suit.

## V.    CONCLUSION

Plaintiff has shown standing, established that New York has personal jurisdiction over Defendant, and demonstrated that the she has stated a claim under Rule 12(b)(6). As such, this Court should retain supplemental jurisdiction. For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.


Dated: August 14, 2024


                                        Respectfully Submitted,

                                        **STEIN SAKS, PLLC**

                                        */s/Mark Rozenberg*_____
                                        Mark Rozenberg, Esq.
                                        One University Plaza Drive, Suite 620
                                        Hackensack, New Jersey 07601
                                        Phone: 201-808-3959
                                        Fax: 202-282-6501
                                        mrozenberg@steinsakslegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2024, I electronically served the foregoing served this day on all counsel either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*<u>/s/Mark Rozenberg</u>*
Mark Rozenberg, Esq.