UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
JACQUELINE FERNANDEZ,                                          :
                                                               :            24-CV-1592 (VEC)
                                          Plaintiff,           :
                                                               :            <u>OPINION & ORDER</u>
                       -against-                               :
                                                               :
KATIE MAY, LLC,                                                :
                                                               :
                                          Defendant.           :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Jacqueline Fernandez, who is legally blind, sued Defendant Katie May, LLC pursuant to the Americans with Disabilities Act ("ADA") and New York City Human Rights Law ("NYCHRL") claiming that its website is inaccessible to her and other blind or visually impaired people. Defendant moved to dismiss, arguing that it is not subject to personal jurisdiction in this Court and that Plaintiff lacks standing and has failed to state a claim. Defendant's motion is DENIED.

## BACKGROUND

      Defendant is a fashion retailer that sells specialty clothing and accessories on its website. Am. Compl., Dkt. 16 ¶¶ 23, 37–38.[1] Plaintiff, who is legally blind and uses screen-reading software to navigate the Internet, has visited Defendant's website on multiple occasions in order to purchase a dress. *Id*. ¶¶ 39–40. She claims that she was unable to complete the transaction because the website contained numerous accessibility barriers, including obstructed search suggestions, incomplete text descriptions of images, and unclear labels for interactive elements.

---

[1]    For the purposes of this motion, the Court assumes all facts in the Amended Complaint are true.

*Id.* ¶¶ 43–45. As a result of these and other accessibility problems, Plaintiff claims she was "denied a shopping experience similar to that of a sighted individual." *Id.* ¶ 42.

Plaintiff seeks injunctive and declaratory relief pursuant to Title III of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"), as well as damages pursuant to the NYCHRL. *See id.* ¶¶ 66–89. Defendant moved to dismiss the Amended Complaint in its entirety for a lack of standing, lack of specific personal jurisdiction, and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), respectively. Def. Mem., Dkt. 19.

## DISCUSSION

### I. Plaintiff Has Alleged Adequately Standing

An ADA or NYCHRL plaintiff has standing to sue for injunctive relief if "(1) the plaintiff allege[s] past injury under the ADA; (2) it [is] reasonable to infer that the discriminatory treatment [will] continue; and (3) it [is] reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [defendant's business] to plaintiff's home, that plaintiff intend[s] to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013) (citation omitted); *see Mendez v. Apple Inc.*, No. 18-CV-7550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) (collecting cases for the proposition that NYCHRL claims involving disability discrimination "are governed by the same standing requirements as the ADA"). A plaintiff cannot satisfy the third element merely with "naked assertions of intent to return" to the defendant's establishment. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022) (internal quotation marks omitted). Rather, she must allege specific and non-conclusory facts from which the Court can infer an intent to return, such as the dates on which she attempted to access the location, the transactions she intended to complete, and the reasons why she intends to return. *Id.* at 75–78; *see also Loadholt v. Dungarees, Inc.*, 22-CV-4699, 2023

WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023) ("Courts in this Circuit have recognized that the Second Circuit's recent *Calcano* decision raised the bar appreciably for adequately pleading standing to seek injunctive relief in ADA cases.") (internal quotation marks omitted).

The first two requirements (past injury and likelihood of continued discrimination) are easily satisfied. Plaintiff's allegation that she attempted to access Defendant's website and was unable to do so constitutes an injury under the ADA. Am. Compl. ¶ 20; *see Camacho v. Vanderbilt Univ.*, No. 18-CV-10694, 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019) (plaintiff "suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability"). It is also reasonable to infer that such injury will continue, inasmuch as she has encountered the accessibility barriers "multiple times" and "Defendant lacks a corporate policy that is reasonably calculated to cause the [w]ebsite to become and remain accessible." *Id.* ¶ 39, 55.

Plaintiff has also satisfied the third requirement because she alleged specific, non-conclusory facts from which the Court can reasonably infer that she is likely to return to Defendant's website if it becomes accessible. In the Amended Complaint, Plaintiff alleged that she wished to purchase Defendant's "Ashun Dress in Black" because she "was looking for a strapless maxi dress for party wear." *Id.* ¶¶ 21–22. She also cites a specific date on which she attempted to access the site and notes that she made "multiple" other attempts. *Id.* ¶ 20. These allegations, taken together, are sufficient to support the inference that Plaintiff is likely to return to Defendant's website if the accessibility barriers are removed. *See Zinnamon v. Satya Jewelry II, LLC*, 23-CV-781, 2023 WL 3511123, at *2 (S.D.N.Y. Apr. 28, 2023) ("In the virtual world, the third requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in

the products or services available on the particular website, that the plaintiff intends to return to the website.").

## II. Defendant is Subject to Personal Jurisdiction in This Court

On a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that the defendant is subject to personal jurisdiction in the court in which the action is brought. *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). "To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, [courts] first apply the forum state's long-arm statute. If the long-arm statute permits personal jurisdiction, [courts] analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citations and internal quotation marks omitted). Here, the Court's exercise of jurisdiction is appropriate under both the New York long-arm statute and the Constitution.

### A. The Exercise of Personal Jurisdiction is Appropriate under New York's Long-Arm Statute

Pursuant to New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). A single purposeful transaction in New York is sufficient to subject a person to personal jurisdiction pursuant to section 302(a)(1), as long as there is a "substantial relationship between the transaction and the claim asserted." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010).

Here, the Amended Complaint alleges that Defendant ships orders made online to customers in New York and that Plaintiff attempted to complete a transaction on Defendant's

website from her New York home. Am. Compl. ¶¶ 13, 20, 37. Her claim arises directly out of the fact that she was unable to complete that transaction. Nothing more is needed to satisfy the long-arm statute. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 278 (2d Cir. 2024) ("Section 302(a)(1) doesn't require a completed sale. It only requires a transaction."), *cert. denied*, No. 24-653, 2025 WL 247472 (U.S. Jan. 21, 2025).

      **B.**    **The Exercise of Personal Jurisdiction Comports with Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a non-resident defendant unless the defendant has sufficient minimum contacts with the forum state "such that maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019) (internal quotation marks omitted). The key question is "whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (cleaned up). "It would be unusual . . . if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (citations and internal quotation marks omitted).

    For the same reasons that Defendant's actions fall within the scope of New York's long-arm statute, Defendant also has sufficient minimum contacts with New York such that the exercise of jurisdiction would not violate the Due Process Clause. Defendant's assertions that it does not maintain any offices, employees, or bank accounts in New York, and that it ships only a small number of products to New York, are irrelevant. Def. Mem. at 15. The fact that Defendant

ships even a "miniscule" amount of product to New York constitutes purposeful availment for purposes of the due process inquiry. *Mattheos v. JLG Indus., Inc.*, No. 20-CV-02356, 2022 WL 17361124, at *4 (E.D.N.Y. Dec. 1, 2022); *see Chloé*, 616 F.3d at 164 (finding that "actually sending items to New York" is conduct "purposefully directed toward the state"); *RV Skincare Brands LLC v. Digby Invs. Ltd.,* 394 F. Supp. 3d 376, 384 (S.D.N.Y. 2019) ("Where a specific customer happens to reside is a fortuitous circumstance for virtually every retail sale—the 'purposeful availment' element is nonetheless satisfied if the business, after learning where the customer resides, decides to send a product into that jurisdiction.")

### III.   The Amended Complaint States a Claim Upon Which Relief Can Be Granted

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must construe all well-pled factual allegations in a complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

#### A.   Defendant's Claim That Its Website Is Accessible Cannot Be Considered on a Motion to Dismiss

Defendant first argues that Plaintiff's claim that its website is inaccessible is false. It supports this claim with a declaration from its Chief Operating Officer, Todd Tucker, who claims that he "attempted to view and purchase" the item Plaintiff alleges she wants to buy and "did not encounter any accessibility issues." Tucker Decl., Dkt. 20 ¶ 33. It is black-letter law that "in

determining a Rule 12(b)(6) motion, the Court *must* accept all factual allegations in the complaint as true and will therefore not consider . . . extrinsic evidence." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 514 (S.D.N.Y. 2017).  The Court, therefore, accords no weight to Mr. Tucker's declaration at this time, and instead credits Plaintiff's allegations that she encountered multiple access barriers when she attempted to shop on Defendant's website.  Am. Compl. ¶¶ 43–45.

> **B.     Plaintiff Was Not Required to Provide Notice of Her Disability to Defendant**

Defendant next argues that Plaintiff failed to provide Defendant with notice of her disability prior to bringing this lawsuit.  In ADA cases where a plaintiff argues that the defendant has failed to make reasonable accommodations in light of her disability, "notice of the alleged disability . . . is an assumed prerequisite." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012) (citing *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 86 (2d Cir. 2000)).  Not all ADA claims, however, are predicated on a failure to make reasonable accommodations.  "[A] plaintiff can base a disability discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (cleaned up).  A plaintiff is not required to "plead the legal theory . . . underlying his claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

Plaintiff argues that she was not obligated to provide notice of her disability to Defendant because her Title III claim is based on a theory of disparate impact, not failure to provide reasonable accommodation.  Pl. Opp., Dkt. 21, at 23–25.  To state a claim for disparate impact, "the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *McCulloch v. Town of Milan*, 559 F. App'x 96, 99

(2d Cir. 2014). Plaintiff has adequately alleged facts to support both elements; she alleges that Defendant operated a seemingly ordinary website that, as a result of systemic problems with its design, led to adverse outcomes for blind customers. Am. Compl. ¶¶ 18, 48–49, 51–55. Accordingly, this case falls neatly in line with others that have concluded that blind plaintiffs who challenge accessibility barriers on websites may proceed on a disparate impact theory. *See, e.g.*, *Davis v. Wild Friends Foods, Inc.*, No. 22-CV-04244, 2023 WL 4364465, at *9–*10 (S.D.N.Y. July 5, 2023); *Guerrero v. Ogawa USA Inc.*, No. 22-CV-2583, 2023 WL 4187561, at *6 (S.D.N.Y. June 26, 2023).

### C. A Website Is a Place of Public Accommodation Within the Meaning of Title III

Finally, Plaintiff, noting that Title III of the ADA prohibits discrimination against individuals with disabilities only in "place[s] of public accommodation," argues that the website is not a "place of public accommodation" because it has no brick-and-mortar locations. 42 U.S.C. § 12182(a); Def. Mem. at 21–24. Many judges in this District (including the Undersigned) have considered this argument and reached varying conclusions. *See, e.g.*, *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 18–19 (S.D.N.Y. 2022) (websites are places of public accommodation); *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 344 (S.D.N.Y. 2023) (same); *Sookul v. Fresh Clean Threads, Inc.*, No. 23-CV-10164, 2024 WL 4499206, at *8 (S.D.N.Y. Oct. 16, 2024) (websites are not places of public accommodation). This Court remains persuaded — as it was in *Tavarez v. Moo Organic Chocolates*, 623 F. Supp. 3d 365 (S.D.N.Y. 2022) — that websites qualify as places of public accommodation within the meaning of Title III, regardless of whether they are tethered to a physical location.

The Court looks first to the text of the statute. In any question of interpretation, the Court must view individual statutory provisions "in context with and by reference to the whole

statutory scheme, by appreciating how sections relate to one another." *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002). Title III defines "public accommodation" to include many different types of entities, some of which are clearly tied to physical locations (such as "theater[s]" and "park[s]") and some of which are not (such as "travel service[s]" and "shoe repair service[s]"). *See* 42 U.S.C. § 12181(7)(C), (I), (F). As this Court noted in *Tavarez*, "[t]he inclusion of a service indicates that places of public accommodation are not limited to physical places." 623 F. Supp. 3d at 368; *see also Romero*, 580 F. Supp. 3d at 18 ("[B]ecause Congress included 'travel services' in Title III's list of covered entities, and because many travel services do not require customers to enter an office to obtain their services, Congress 'clearly contemplated' that the ADA would apply to service providers that do not require a person to physically enter an actual physical structure.").

Of relevance here, "public accommodation" is defined to include both "clothing store[s]" and "other sales or rental establishment[s]." 42 U.S.C. § 12181(7)(E). The catchall language of "other sales or rental establishment[s]," as distinct from "store[s]," suggests that the statute covers all businesses engaged in the sale and rental of goods, regardless of whether they maintain storefronts. *United States v. Mason*, 692 F.3d 178, 182 (2d Cir. 2012) ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended."). Accordingly, Defendant provides a "public accommodation" even though it completes its sales online rather than in physical stores.

The Second Circuit appeared to embrace this less location-bound reading of Title III in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g,* 204 F.3d 392 (2d Cir. 2000). In that case, the court concluded that an insurance underwriter may violate Title III by refusing to issue life insurance policies to people with

disabilities even if disabled people were not denied physical access to the insurer's offices. *Id.* at 30. While the court did not address whether a provider of goods and services must maintain a physical location in order to be subject to Title III, it did find that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Id.* at 33. This directive, coupled with the statutory language and the ADA's overriding purpose of "integrat[ing] disabled individuals 'into the economic and social mainstream of American life,'" strongly suggests that Internet-only retailers are subject to Title III. *Tavarez*, 623 F. Supp. 3d at 369 (quoting H.R. Rep. No. 101-485, pt. 2, at 50 (1990)); *see also* 42 U.S.C. § 12101(b) ("It is the purpose of this [Act] . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . [and] to invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities.").

    A recent opinion by Judge Woods reasoned that, regardless of whether the services provided on a website constitute a "public accommodation," the website itself cannot be covered by Title III because it is not a "place." *See Sookul*, 2024 WL 4499206, at *8 ("Dictionaries overwhelmingly define 'place' to mean a physical location."). The Court disagrees. *Pallozzi* made clear that a "place of public accommodation" may or may not be the physical location where goods were actually sold or services were actually rendered. *See Pallozzi*, 198 F.3d at 33 ("We find no merit in Allstate's contention that, because insurance policies are not used in places of public accommodation, they do not qualify as goods or services 'of a place of public accommodation.' The term 'of' does not generally mean 'in' . . . ."). It goes without saying that, wherever Defendant's employees did the work that went into selling its products, they did so

10

within four walls. What matters for purposes of Title III is not where those walls were located, but whether Defendant provided disabled customers "full and equal enjoyment" of its services. *Id.* at 31 (quoting 42 U.S.C. § 12182(a)). Because Plaintiff has alleged that it did not, she has stated a claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

The parties must appear for an initial pretrial conference on **Friday, April 4, 2025, at 10:00 A.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. Not later than **Thursday, March 27, 2025**, the parties must file a joint letter and proposed case management plan and scheduling order, as outlined in Paragraph 5 of the Notice of Initial Pretrial Conference (Dkt. 5).

**SO ORDERED.**

Date: March 20, 2025
      New York, New York

_____
VALERIE CAPRONI
United States District Judge